IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**GILBERT GOODSON,**

          **Plaintiff,**

      v.                            CASE NO. 14-3001-SAC

**(fnu) Vieyra, et al.,**

          **Defendants.**

**MEMORANDUM AND ORDER**

This pro se civil rights complaint was filed pursuant to 42 U.S.C. § 1983 by an inmate of the Hutchinson Correctional Facility, Hutchinson, Kansas (HCF). Plaintiff claims that he is in danger at the HCF because it also houses a large group of rival "Suranos" and asserts that he is being subjected to cruel and unusual punishment as a result. He seeks injunctive relief and damages. Mr. Goodson is required to satisfy the statutory filing fee prerequisites. In addition, he is required to show cause why his complaint should not be dismissed for failure to state a claim.

**FILING FEE**

The fees for filing a civil rights complaint in federal court total $400.00 and consist of the statutory fee of $350.00 plus an administrative fee of $50.00; or for one that is granted leave to proceed in forma pauperis, the fee is $350.00. Plaintiff has submitted a "Forma Pauperis Affidavit" (Doc. 2). However, neither

the motion nor the financial information attached conforms to federal law.  28 U.S.C. § 1915 requires that a prisoner seeking to bring a civil action without prepayment of fees submit an affidavit described in subsection (a)(1), and a "certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing" of the action "obtained from the appropriate official of each prison at which the prisoner is or was confined."  28 U.S.C. § 1915(a)(2).  Local court rule requires that motions to proceed without prepayment of fees be upon court-approved forms.  Plaintiff is given time to submit his motion upon proper forms.  This action may not proceed until he has satisfied the filing fee prerequisites and may be dismissed without further notice if he fails to do so within the prescribed time.

Plaintiff is reminded that under 28 U.S.C. § 1915(b)(1), a prisoner granted such leave is not relieved of the obligation to pay the full fee of $350.00 for filing a civil action.  Instead, it merely entitles him to pay the filing fee over time through payments deducted automatically from his inmate trust fund account as authorized by 28 U.S.C. § 1915(b)(2).  Furthermore, § 1915(b)(1), requires the court to assess an initial partial filing fee of twenty percent of the greater of the average monthly deposits or average monthly balance in the prisoner's account for the six months immediately preceding the date of filing of the civil action.  The court will determine the partial fee once the requisite financial information

is received.

**ALLEGATIONS AND CLAIMS**

Plaintiff alleges the following factual basis for his complaint. "[S]ince 2009 the Suranos have been assaulting their arch rivals the Nortenos." There have been "numerous altercations in this SMU program" at HCF in A-3 cell house between the Suranos and Nortenos and Nortenos allies. Defendants have continued to allow "the two groups to stay in the same program" despite the fights. The SMU program started as one class but was divided into two due to "various altercations between Nortenos and Suranos," which shows that defendants Vieyra and Jackson "know about this volatile and harsh situation." About 50 to 80 Suranos are currently housed at the HCF, with only one, two or no Nortenos. Plaintiff is "labeled" as a member of LLC, a Mexican Group that is an "ally of the Nortenos, and rival to Suranos." Every time "KDOC classifications/RDU sends a Norteno or an ally . . . to HCF," there is a "brief altercation with the Suranos, after which the Norteno is placed in segregation and then transferred. The "administration" has sent "a couple guys" that were jumped by the Surranos out of state and seems to be developing this as a policy, which puts a strain on the persons transferred and their personal relationships. "The staff" and defendants Vieyra and Jackson have ignored "the seriousness of the situation" and allowed it to exist.

3

In May 2013, plaintiff was transferred "from El Dorado's Super Max Unit to HCF to participate in the Special Management Unit (SMU)." He requested a transfer to Lansing's SMU program or El Dorado's population. His request was denied by defendant Vieyra, Deputy Warden of Programs over SMU, and defendant Joe Jackson, unit team manager in the SMU. Defendants Vieyra and Jackson have access to plaintiff's file and HCF records, and thus knew of plaintiff's "dealings" with the Surranos and yet allowed him to be moved to HCF and kept there until he was jumped. Defendants "were given a chance to examine (his) case and consider his charges against them through the grievance procedure."

On October 11, 2013, defendant Smith, a CO II in the SMU unit, opened "a rival Surano's door she wasn't supposed to" and plaintiff and the rival "fought when he ran out swinging at me."[1] Smith "has done this before." Plaintiff received a "black eye and lumps" in this fight.

Submission of evidence with the complaint is to be discouraged. However, plaintiff attaches 28 pages of exhibits to his complaint, which now may be considered as part of the complaint. In his Inmate Grievance dated November 1, 2013, Goodson complained that defendant Smith opened an inmate's door "from the other half of class" that is kept separate, the inmate came at plaintiff, and they fought; and

---

1  Plaintiff exhibits a Disciplinary Report written against him on October 11, 2013, charging him with "Fighting Class I." R. Smith CO II reported that Goodson began fighting with another inmate after the other inmate's "cell was opened accidently (sic)." Plaintiff does not reveal what became of these charges.

4

that since his arrival in May he had requested an immediate transfer as a preventive measure because "these altercations were a common occurrence," but his requests were denied. Plaintiff sought release from the SMU program, transfer to population at EDCF, punitive damages, and "a change in HCF/SMU policy that keeps Nortenos and their affiliates" from being sent to HCF. G. Riemann CCII responded to his grievance, in part, as follows:

> You have previously been told that your request to be moved will be considered at the appropriate time in accordance with the program guidelines and time frame. As for CO II Smith opening doors when she is not supposed to has been addressed and this action will not be addressed with you. Lastly, there is no policy at HCF that keeps Nortenos from being sent here.

Plaintiff appealed to the Warden, who responded that Goodson's request for transfer would be considered within the program guidelines and timeframe.[2] Plaintiff appealed to the Secretary of Corrections who adopted the facility staff response. COII Brown informed plaintiff in response to another of his grievances:

> Right now, Lansing is not taking anyone unless they are going to Phase 3 and ONLY if they have room and agree to it. Which is not often. We can request on your review (I have put in the request) and also when you are getting close to Phase 3. IF Lansing gets openings and we are able to transfer people you will be reviewed at that time.

On August 24, 2013, defendant Vieyra responded to another of

---

2   In response to an earlier grievance seeking transfer to Lansing, plaintiff was informed:

> Transfers can be requested at review. At the end of your SMU program this request will be reviewed by the administration and they will determine what is in the best interest to the safety and security of the facility and yourself.

5

plaintiff's grievances as follows:

> In reviewing your situation I was advised that both Mr. Jackson, Admin UTM, and Warden Cline have responded to similar requests . . . . Transfers, housing placement, and program participation/detail assignments are Classification Decision-Making Processes. As such, they are not grievable items under KAR # 44-15-101a(2). Some SMU participants advancing to Phase III have been moved to Lansing. Others who have completed the program have been moved to other facilities, depending on their custody levels. Your 8th Amendment rights are not being violated and you are not in imminent danger in your current housing/program placement. As you progress through the SMU phase levels you will be interviewed by the SMU Committee, consisting of Mr. Langford, Deputy Warden of Operations, Warden Cline, and myself. At that time your request for a transfer to LCF to complete the SMU program can be heard and considered.

On September 5, 2013, Warden Cline likewise responded that Mr. Goodson's "current housing placement" does not place him "in any more of a dangerous situation than being in SMU at LCF" and that his "request to be moved will be considered at the appropriate time."

Plaintiff claims that defendants exhibited "callous disregard" and "deliberate indifference" to his "harsh prison conditions" when they denied his request for transfer and asserts that he is being subjected to cruel and unusual punishment. His allegations are considered as one count, rather than three, asserting violation of the Eighth and Fourteenth Amendments. Plaintiff seeks a declaration that defendants violated his constitutional rights as well as compensatory and punitive damages. In addition, he asks for "an immediate transfer to EDCF population for personal reasons (family-friends)." Finally, he asks the court to order defendants

6

to "refus(e) to accept" any Nortenos or their allies into the SMU program at HCF.

**SCREENING**

Because Mr. Goodson is a prisoner suing government officials, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48-49 (1988)(citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake,* 469 F.3d 910, 913 (10th Cir. 2006). Nevertheless, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). A pro se litigant's "conclusory allegations without supporting factual

averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

## **FAILURE TO STATE FACTS TO SUPPORT CONSTITUTIONAL CLAIM**

Having applied the foregoing standards to the complaint filed herein, the court finds that it is subject to being dismissed for failure to state facts sufficient to support a federal constitutional claim. "Prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003). "The deliberate indifference of a prison official 'to a substantial risk of serious harm to an inmate violates the Eighth Amendment.'" *Id.* (*citing Farmer*, 511 U.S. at 828). However, prison officials are not expected to prevent all inmate-on-inmate violence. *Farmer*, 511 U.S. at 834; *Berry v. City of Muskogee*, 900 F.2d 1489, 1494-95 (10th Cir. 1990). "To establish a cognizable Eighth Amendment claim for failure to protect, the plaintiff 'must show that

8

he is incarcerated under conditions posing a substantial risk of serious harm,' the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component." *Verdecia*, 327 F.3d at 1175 (*citing Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001)). The subjective component is satisfied if a prison official knows of and disregards an excessive risk to inmate safety. *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006), *overruled on other grounds by Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008)(*quoting Farmer*, 511 U.S. at 834); *Jones v. Bernard*, 77 Fed.Appx. 467, 469-70 (10th Cir. 2003). Negligent failure to protect inmates from assaults by other inmates is not actionable under the Eighth Amendment. *Farmer*, 511 U.S. at 835.

A. Objective Component

The facts alleged by plaintiff together with the administrative record provided by him are not sufficient to satisfy the objective component of his deliberate indifference claim. The Tenth Circuit found in *Jones v. Bernard*:

> The facts as alleged by plaintiff fail to demonstrate the existence of a known or obvious risk except in the most conclusory of terms.
>
> . . . Prison is by its nature a confined space. This is not a situation in which prison officials knew of and ignored a serious risk of harm, for instance, from a prisoner's cellmate, with whom he might be locked up in close quarters.

9

*Jones*, 77 Fed.Appx. at 469-70. Mr. Goodson repeatedly states that there has been a pattern of violence between rival groups at the HCF. However, his allegations in this regard are mostly conclusory. Details such as dates and names of participants in violent incidents are generally not provided, and only one such incident is described that involved plaintiff. Defendant Vieyra advised plaintiff that he was not in imminent danger at his current housing assignment. Warden Cline advised him that his current housing is no more dangerous than SMU at LCF, where he sought to be transferred. And plaintiff has repeatedly been informed that his request for transfer will be considered at the appropriate time.

B. Subjective Component

The court further finds that plaintiff fails to allege facts establishing the subjective component of his claim. The subjective component of a deliberate indifference claim requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Farmer*, 511 U.S. at 838. To show "the requisite deliberate indifference," [the plaintiff] "must establish that defendant(s) knew he faced a substantial risk of harm and disregarded that risk, 'by failing to take reasonable measures to abate it.'" *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (*quoting Farmer*, 511 U.S. at 847). It is not enough to allege that prison officials failed "to alleviate

10

a significant risk that [they] should have perceived but did not." *Farmer*, 511 U.S. at 838. For example, in *Verdecia*, the Tenth Circuit found that the plaintiff presented facts from which the inference could be drawn that a substantial risk of serious harm existed. Nevertheless, the court further found that plaintiff failed to establish that the defendants had actually drawn such an inference. *Verdecia*, 327 F.3d at 1176. The plaintiff in *Verdecia* was a Cuban inmate at a federal penitentiary who was placed in a cell with two members of the Latin Kings. *Verdecia*, 327 F.3d at 1173. The plaintiff claimed that he had asked one defendant prison official to move him from the cell and had given a transfer request to another stating he was in danger of attack by his cellmates. *Id.* The plaintiff also alleged that, prior to his attack, there were two instances of violence between Cuban inmates and members of the Latin Kings. *Id.* at 1174. Despite these allegations, the Tenth Circuit found that the plaintiff in *Verdicia* had not shown deliberate indifference. *Id.* at 1176.

In the instant case, plaintiff has failed to allege facts, as opposed to conclusory statements, to establish that either defendant Vieyra or Jackson acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. There are no facts alleged to show that prior to plaintiff's fight, any defendant had knowledge that plaintiff faced a substantial risk of harm from the other inmate involved in the fight. Even plaintiff's statement that all

11

defendants knew he was a Norteno ally, is conclusory and as such is not entitled to an assumption of truth. *Iqbal*, 556 U.S. at 678. There is also no indication that plaintiff had a history of being assaulted due to his group association or had previously been threatened by rival groups at the HCF. Plaintiff's relevant factual allegations describe, at most, an isolated incident of negligence. As the United States Supreme Court has explained:

> Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles.

*See Baker v. McCollan*, 443 U.S. 137, 146 (1979).

Furthermore, it is well settled that decisions regarding inmate housing and program assignments are "at the core" of the expertise and within the discretion of prison officials. *McKune v. Lile*, 536 U.S. 24, 39 (2002)(*citing Meachum v. Fano*, 427 U.S. 215, 225 (1976)). It is likewise settled that a prisoner has neither a liberty nor a property interest in being housed at a particular prison or given a certain security classification. *Id.* at 225; *see also Sandin v. Conner*, 515 U.S. 472, 485-86 (1995); *Reno v. Koray* 515 U.S. 50, 63 (1995); *Rhodes v. Chapman*, 452 U.S. 337, 349 n. 14 (1981)("[A] prison's internal security is peculiarly a matter normally left to the discretion of prison administrators."). The court is thus without authority to order plaintiff's transfer as requested.

Plaintiff is given time to show cause why this action should

not be dismissed for failure to allege facts sufficient to state a federal constitutional claim.  If he fails to show good cause within the prescribed time, this action may be dismissed without further notice.

**IT IS THEREFORE ORDERED** that plaintiff is granted thirty (30) days in which to submit a motion to proceed without prepayment of fees upon court-approved forms together with a certified statement of his inmate account for the appropriate six-month period.

**IT IS FURTHER ORDERED** that within the same thirty-day period plaintiff is required to show cause why this action should not be dismissed for failure to allege sufficient facts to support a federal constitutional claim.

The clerk is directed to send plaintiff IFP forms.

**IT IS SO ORDERED.**

Dated this 7th day of January, 2014, at Topeka, Kansas.

**s/Sam A. Crow**
**U. S. Senior District Judge**