**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

GILBERT GOODSON,

              **Plaintiff,**

      v.                              **CASE NO.  14-3001-SAC**

(fnu) Vieyra, et al.,

              **Defendants.**

**<u>MEMORANDUM AND ORDER</u>**

In this pro se civil rights complaint filed pursuant to 42 U.S.C. § 1983, Mr. Goodson claims that he is in danger because the Hutchinson Correctional Facility (HCF) where he is confined houses a large group of "Suranos,"[1] while he is recognized as an ally of a rival gang he refers to as "Nortenos."[2]  He asserts that he is being subjected to cruel and unusual punishment as a result.  He seeks damages as well as injunctive relief in the form of court orders requiring defendants to immediately transfer him to "population" at the ElDorado Correctional Facility (EDCF) "for personal reasons (family-friends)"[3] and to "refus(e) to accept" any Nortenos or their allies into the SMU program at HCF.

Upon screening the complaint filed herein, the court entered a Memorandum and Order (hereinafter M&O) granting plaintiff time in

---

[1]    Plaintiff uses various spellings but does not use "Surenos," which refers to a common prison gang connected with the Mexican Mafia.

[2]    "Norteno" is used to refer to Norteno gang members and allies.

[3]    The court has no authority to transfer an inmate for personal reasons.

which to provide the requisite financial information to support his motion to proceed without prepayment of fees (IFP motion). In addition, plaintiff was required to show cause why this action should not be dismissed for failure to allege sufficient facts to support a federal constitutional claim. Plaintiff has submitted a certified statement of his institutional account, which indicates that his IFP motion should be granted. Plaintiff has also submitted his Response (Doc. 6) to the court's order to show cause. Having considered all the materials in the file, the court concludes that Mr. Goodson still fails to allege sufficient facts to support a federal constitutional claim under the Eighth Amendment.[4] Accordingly, the court dismisses this action for the reasons stated in its prior M&O and herein.

In its prior M&O, the court noted that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners,"[5] and that the "deliberate indifference of a prison

---

[4]    When plaintiff's conclusory allegations and statements are disregarded, the only well-pleaded facts regarding his personal treatment by defendants that remain are: he immediately requested a transfer upon being housed at the HCF that was denied; there have been some incidents of gang-related violence in KDOC prisons and the HCF over the past 5 years including one that involved plaintiff at the HCF; in that incident he fought with a rival gang member who ran at him when a door between them was mistakenly opened by defendant Smith; and that defendants work in A-3 where plaintiff is housed. Plaintiff was advised that a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). He was further advised that the complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[5]    It is well known that gang violence is a serious security concern in prison systems. The Supreme Court has observed that:

   prison gangs like the Aryan Brotherhood and the Black Guerrilla Family

official 'to a substantial risk of serious harm to an inmate violates the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 843 (1994). The court explained the standards for establishing "a cognizable Eighth Amendment claim for failure to protect," including that plaintiff must satisfy the objective component by showing "that he is incarcerated under conditions posing a substantial risk of serious harm." *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003). The court considered the facts alleged by plaintiff together with the portion of the administrative record exhibited by him and found that his allegations were not sufficient to satisfy the objective component of his deliberate indifference claim. Plaintiff's allegations of "numerous altercations" since 2009 and that altercations occur "every time" a Norteno is sent to HCF were conclusory because no dates or other underlying facts were provided.[6]

---

organize themselves along racial lines, and these gangs perpetuate hate and violence." (citation omitted). Interracial murders and assaults among inmates perpetrated by these gangs are common.

*Johnson v. California*, 543 U.S. 499, 533-34 (2005)(citing see, e.g., *Walker v. Gomez*, 370 F.3d 969, 962-69 (9th Cir. 2004)(describing a host of murders and attempted murders by a handful of Mexican Mafia members); *United States v. Silverstein*, 732 F.2d 1338, 1341-1342 (7th Cir 1984)(describing murder of a black inmate by members of the Aryan Brotherhood); *State v. Kell*, 61 P.3d 1019, 1024-1025 (D. Utah 2002)(describing fatal stabbing of a black inmate by two white supremacists); *State v. Farmer*, 126 Ariz. 569, 570-571, 617 P.2d 521, 522-523 (1980)(en banc)(describing murder of a black inmate by members and recruits of the Aryan Brotherhood)).

[6]     Plaintiff relies upon "declarations" of other inmates that he submitted with his complaint and remarks that they were not mentioned by the court in its prior M&O. He re-submits two of them with his Response. These declarations provide little if any support for plaintiff's claims. The statements in them that appear to be based upon the declarant's own personal knowledge are conclusory. Inmate Olivares states that he was "involved in an STG fight with the surranos," but provides no underlying facts that might link this event to plaintiff's claims. Olivares' statement that the "EDCF Administration is fully aware" of "the conflicts

Plaintiff has not cured these deficiencies.

In his Response, plaintiff adds a few new allegations that are conclusory and repeats others, including that "two major fights broke out" at HCF in 2009 to "push the Nortenos out" and that defendants know of "this hostile environment" because they work "in A-3". Plaintiff's allegations regarding the gang affilations of the inmate population at the HCF are bald statements.[7]  He alleges in his complaint and his Response that "no Nortenos have been allowed" at the HCF at the same time that he makes reference to other Nortenos housed at HCF and claims the court needs to order KDOC not to send any more Nortenos to the HCF.  However, plaintiff has not alleged facts that if proven, would establish that a substantial risk of gang-related inmate attacks at HCF has been "well-documented" or "expressly noted by prison officials in the past."  His allegations of a years-long "hostile environment" at the HCF are nothing but

---

we've been having throughout the State Prison System" lends no support to plaintiff's claim of substantial danger at the HCF in particular.  This declarant's statements regarding his cousins appear to be hearsay.  Inmate Kyea's statement that he "was involved in an altercation with the surranos in Norton Correctional Facility" likewise does not substantiate plaintiff's allegations about the HCF.  Kyea does allege that he was "jumped" by a surrano at the HCF, but provides no date or other underlying facts.  Thus, this event is not shown to support plaintiff's claim that the named defendants have caused Goodson to be subjected to substantial risk.  The same is true of Gonzales' statement that when he came to HCF and "just went to population" he was jumped by three Surranos.  No dates or other details are provided regarding this incident, and plaintiff has not been housed in population.  Finally, none of the declarants describes any deliberately indifferent acts on the part of the named defendants.

[7]     Plaintiff states that the HCF houses 70 to 80 Suranos and only 1 to 3 Nortenos but alleges no facts to support this statement and provides no source.  Nor does he provide comparable information regarding gang affiliation or frequency of altercations at any other institution.

conclusory statements.[8]  See *Farmer v. Brennan*, 511 U.S. 825, 842-43 (1994)(stating that "if an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk").  This is not a case in which the plaintiff alleges that he is housed in the same cell or open living space with an inmate that is a known threat to him.  In fact, Mr. Goodson does not describe his current living arrangement at the HCF and explain how it fails to afford him protection from contact with known members of a rival gang.  He clearly has not presented facts showing it is obvious that he faces an unreasonable risk at the HCF.  The court finds that Mr. Goodson's allegations show nothing more than his general concern that he is at risk based on his belief that an unusually large number of rival gang members are housed at the HCF.  Such a "generalized concern" is insufficient to establish the substantial risk of serious harm necessary to support a claim of an Eighth Amendment violation.  See *Whiteman v. Ortiz*, 202 F.3d 284, *2 (10th Cir. 1999)(prisoner's

---

[8]    In his Response, plaintiff newly states that "defendants witness these altercations on a monthly basis."  However, no facts are alleged to support either that "these altercations" occur on a monthly basis, or that plaintiff has personal knowledge as to what defendants have observed.

"generalized concern regarding his fear of 'Mexican gang members' was insufficient to establish the substantial risk of serious harm necessary to support his claim" of Eighth Amendment violation).

The court also previously discussed plaintiff's specific allegations regarding the fighting incident that occurred on October 11, 2013, in the SMU at the HCF after defendant Smith opened "a rival Surano's door," and plaintiff and the other inmate "fought when he ran out swinging at me."[9]  This violent incident is the only one described that involved plaintiff and does not establish that Mr. Goodson was or is being subjected to a substantial threat of physical harm at the HCF.  Plaintiff's own description of this incident indicates that the other inmate was let out a door inadvertently or negligently.[10]  The court concludes that these factual allegations describe, at most, an isolated incident of negligence.  Negligence does not amount to deliberate indifference.  *Id.*  For conduct to amount to deliberate indifference it must be "more blameworthy than negligence," requiring "more than ordinary lack of due care for the prisoner's interests or safety."  *Farmer*, 511 U.S. at 835.  As plaintiff was advised, §1983 does not impose liability for violations

---

[9]     As noted, plaintiff exhibited a Disciplinary Report written against him on this date in which R. Smith reported that Goodson began fighting with another inmate after the other inmate's "cell was opened accidently (sic)" and charged him with "Fighting Class I."  Plaintiff acknowledges that he was found guilty.

[10]    Plaintiff was also informed that negligent failure to protect an inmate from an assault by another inmate is not actionable under the Eighth Amendment, even though he does not appear to base his Eighth Amendment claim upon the alleged failure of Smith or any other defendant to have protected him during the fight incident.

of duties of care arising out of tort law, and the remedy for negligence is in state court.[11]

The court likewise determined in its prior M&O that plaintiff failed to allege facts establishing the subjective component of his Eighth Amendment claim of substantial risk.  Plaintiff was informed that in order to show "the requisite deliberate indifference," he "must establish that defendant(s) knew he faced a substantial risk of harm and disregarded that risk, 'by failing to take reasonable measures to abate it.'"  The court discussed plaintiff's general allegation that defendants allowed and ignored the existence at the HCF of a substantial risk of physical harm to Mr. Goodson and found that he failed to allege sufficient facts to show that the named defendants had knowledge of such a risk and acted with a "sufficiently culpable state of mind."  Plaintiff has not cured this deficiency in his Response.

Plaintiff's exhibits of responses to his prison administrative grievances in which he sought release from the SMU program, transfer, and "a change in HCF/SMU policy that keeps Nortenos and their affiliates" from being sent to the HCF[12] show that he was advised by

---

[11]   The court also noted that no facts were alleged to show that prior to this fight, defendants had knowledge that plaintiff faced a substantial risk of harm from the other inmate or that plaintiff had a history of being assaulted due to his Norteno alliance.  It follows that plaintiff could not satisfy the subjective component on a failure to protect claim based on this incident.

[12]   Plaintiff has alleged no facts to establish that such a policy exists at the HCF, and was informed during the grievance process that there is no policy that keeps Nortenos from being sent to the HCF.  It is unclear whether plaintiff advocates for more or no Nortenos at the HCF.

defendant Vieyra as well as Warden Cline that he is not in imminent danger at the HCF and that his current housing assignment is no more dangerous than SMU at Lansing Correctional Facility (LCF), where he has sought to be transferred.  Thus, plaintiff's own allegations and exhibits indicate that rather than knowing plaintiff was at substantial risk at the HCF, defendants have expressly found that he is safe there until he completes his SMU program and may be considered for transfer.  The court concludes that Mr. Goodson fails to allege sufficient facts to establish that the prison officials named as defendants have knowledge that "he face(s) a substantial risk of harm" from Suranos at the HCF.[13]

Furthermore, even if plaintiff had alleged facts showing defendants' knowledge of a substantial risk to him at the HCF, he has not alleged facts showing that they "disregarded that risk by failing to take reasonable measures to abate it."  *Silverstein v. Federal Bureau of Prisons*, 559 Fed.Appx. 739, 753 (10th Cir. 2014)(citing *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)(quoting *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)).  As the Tenth Circuit in *Silverstein* explained:

> [I]f an official is aware of the potential for harm but takes reasonable efforts to avoid or alleviate that harm, he bears no liability.  See *DeSpain v. Uphoff*, 264 F.3d 965, 975 (10th Cir. 2001).  This is "because the Eighth

---

[13]     The court noted that plaintiff's statement that all defendants knew he was a Norteno ally is conclusory.  As such it is not entitled to a presumption of truth. His allegation that defendants Vieyra and Jackson knew of his "dealings" with the Suranos from his records is also nothing more than a conclusory statement.

Amendment requires only 'reasonable safety,'" so that "prison officials who 'actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.'" *Howard v. Waide*, 534 F.3d 1227, 1239 (10th Cir. 2008)(quoting *Farmer*, 511 U.S. at 844–45, 114 S.Ct. 1970).

*Id.* at 754.  Plaintiff's allegation that he was and is being held in administrative segregation indicates he is provided protection from other inmates.  *Carter v. Padilla*, 54 Fed.Appx. 292, 293 (10th Cir. 2002).

The fact that plaintiff immediately requested a transfer to LCF's SMU program or EDCF's population that was denied by defendants is certainly not grounds for finding either the existence of a substantial risk at the HCF or that defendants had knowledge of such risk.  Moreover, the portion of the administrative record exhibited by plaintiff indicates that he was given legitimate reasons for the denial of his request for immediate transfer.  In response to a grievance, COII Brown explained to plaintiff that Lansing Correctional Facility was not taking anyone unless they "are going to Phase 3" and such a request could be made when plaintiff is getting close to Phase 3.  Mr. Goodson was also repeatedly informed by several prison officials that his transfer request would be considered at the appropriate time within the program guidelines and time frame.

In addition, plaintiff was advised in the M&O that a "prison's internal security is peculiarly a matter normally left to the

9

discretion of prison administrators." *Rhodes v. Chapman*, 452 U.S. 337, 349 n. 14 (1981).  He fails to allege sufficient facts to show that defendants have made arbitrary or capricious decisions regarding his housing assignment and security classification.  He does not even allege facts establishing that any named defendant was responsible for his assignment to HCF or to a particular housing unit or cell within the HCF.  "Only when a prison administrator's actions are taken in bad faith and for no legitimate purpose are they not insulated from our review."  (*Silverstein,* 559 Fed.Appx. at 755 (citing see *Whitley*, 475 U.S. at 322).

For the foregoing reasons and those stated in its prior M&O, the court dismisses the complaint for failure to state sufficient facts to support a claim on which relief may be granted pursuant to 28 U.S.C. § 1915A(a), (b) and 28 U.S.C. § 1915(e)(2)(B).

**IT IS THEREFORE ORDERED BY THE COURT** that plaintiff's Motions to Proceed without Prepayment of Fees (Docs. 2, 7) are granted. Plaintiff is hereby assessed the filing fee of $350.00 to be paid through payments automatically deducted from his inmate trust fund account as authorized by 28 U.S.C. § 1915(b)(2).  The Finance Office of the Facility where plaintiff is currently incarcerated is directed by copy of this Order to collect from plaintiff's account and pay to the clerk of the court twenty percent (20%) of the prior month's income each time the amount in plaintiff's account exceeds ten dollars ($10.00) until plaintiff's outstanding filing fee obligation

has been paid in full.   Plaintiff is directed to cooperate fully with his custodian in authorizing disbursements to satisfy the filing fee, including but not limited to providing any written authorization required by the custodian or any future custodian to disburse funds from his account.

**IT IS FURTHER ORDERED** that this action is dismissed, without prejudice, for failure to allege sufficient facts to state a federal constitutional claim.

The clerk is directed to send a copy of this Order to plaintiff, to the finance officer at the institution in which plaintiff is currently confined, and to the court's finance office.

**IT IS SO ORDERED.**

Dated this 3rd day of November, 2014, at Topeka, Kansas.

**s/Sam A. Crow**
**U. S. Senior District Judge**